*Boles & McQuown, for appellant.*

*Rodman, for appellee.*

---

COMMONWEALTH FOR MUIR *v.* J. S. COLEMAN, ETC.

**Guardian and Ward—Undue Influence—Presumption.**

As to transactions between a guardian and ward, the presumption of undue influence will be indulged in favor of the ward, where the result was beneficial to the guardian, or intended to be so.

**Guardian and Ward—Transaction Between Guardian and Ward—Burden of Proof.**

Where, in making settlements with his ward, the grantor gave the ward notes on third persons, the burden of proof is on the guardian to show the utmost fairness on his part, and that the ward fully understood his legal rights and was fully advised as to the solvency of the payors of the notes.

**Guardian and Ward—Loaning and Collecting Ward's Money—Diligence.**

A guardian, in loaning out money of the ward and in collecting money due the estate should exercise a high degree of diligenc for the protection of the ward's estate.

**Guardian and Ward—Settlement with Ward—Duty of Guardian.**

Where a guardian, in making settlement with his ward assigned him certain notes, it was the duty of the guardian to advise the

ward as to the solvency of the payors' of the notes, and to advise the ward that unless he sued on the notes at the first term of court the guardian's liability as surety for the payors would be lost.

### Guardian and Ward—Settlement with Ward.

A guardian in making settlement with his ward, by assigning notes of third persons, can not hold the ward to the strict rules of law regulating contracts of assignment.

### Guardian and Ward—Settlement with Ward.

The fact that an attorney represented the ward in a settlement with his guardian does not authorize the guardian to treat the ward "as a person at arm's length."

### APPEAL FROM TODD CIRCUIT COURT.

June 4, 1873.

### OPINION BY JUDGE LINDSAY:

The appellant Muir became of age on the 30th of November, 1868. On the 26th of January, 1869, Coleman, the guardian, settled his accounts with the county judge and transferred to Muir as part of his estate the note on Hutchings and Browder, and in satisfaction of a balance due in money assigned to him the note of Hollingsworth and Edwards.

Up to the time of these transactions, a considerable portion of the ward's estate had remained in the hands of the guardian, and the presumption of undue influence arising from the relationship of the parties may be considered as then existing.   Strong Equity, Sec. 317.

The contracts that day entered into between the guardian and ward are to be scrutinized with the utmost jealousy, and as they resulted beneficially to the guardian, or were intended to result beneficially to him, in relieving him from liability to his ward on account of his fiducial acts, the *onus probandi* rests upon him to show the utmost fairness on his part, or in other words, that the ward fully understood his legal rights, and was fully advised as to the solvency of the persons who were the payers of the two notes, and advised that under the law it was his duty to sue on the notes at the succeeding term of the court.   *Richardson, Adm'r, v. Spencer, Marshall, etc.,* 18th B. Monroe 450.

It was the duty of the guardian to loan out the money of the ward, and it was no doubt proper and judicious for him to make the loan to Hutchings in 1866. But prior to the time the note was renewed in 1868, it must have been manifest to every person observant of the manner in which Hutchings was doing business that he was liable to fail at any time. It was the duty of the guardian to have kept himself advised as to this matter, and more especially to have inquired into Hutchings' financial affairs before renewing the note. Had, he done this he would certainly have acquired such information .as would have made it incumbent upon him to have taken steps to collect the money due his ward instead of renewing the note, nor did the fact of Browder's apparent solvency justify him in the course pursued. It has been held by this court that when a guardian leaves the funds of his ward to a solvent principal, he should also require good security, that he should never be allowed to invest the money of his ward upon the credit of a single individual. *Clay v. Clay,* 3d Metcalf 548. The exercise of reasonable diligence would have satisfied Coleman when he renewed the not in 1868, that but one of the obligors was solvent, and such vigilence and fidelity as he should have exercised considering his fiducial position would probably have excited grave suspicions as to the solvency of Browder, the surety. It was not enough that it was possible to collect the note by the exercise of the highest degree of diligence. The ward's money should, when loaned out, have been secured by the note of at least two solvent payors, and whenever it became a matter of doubt as to the solvency of either of them the guardian was bound to take steps to collect it. In this case he not only failed to do so, but renewed the note without additional security, and when he settled with his ward, turned over to him as part of his estate a note which could not be collected except by the exercise of a very high degree of diligence.

Whilst. it is proved that Coleman said to Muir that he ought to wind up his business as speedily as practicable, he does not seem to have advised him as to the ability of Hutchings and Browder to pay the note, but let him rest under the delusion that it was as good as the cash. It was certainly his duty to have done this much, and if he intended, by his assignment, to become surety for the payors of the note, he should have advised his ward that unless he sued at the first term of the court this security would be lost.

He had no right to put off on his ward the note of Hollingsworth & Edwards. He should have paid him in money, having failed to do this, he cannot claim that the ward shall be held to the strict and arbitrary rule of law regulating contracts of assignments. Hollingsworth was insolvent at the time, and Edwards, if good, was a mere surety, lacking less than three months of being released by lapse of time. Coleman does not pretend he informed Muir that unless he sued before the 19th of April, 1869, Edwards would be released. Nor that he (Coleman) would not remain bound on the contract of assignment unless suit was instituted at the final term of the court.

The fact that Muir had counsel to superintend the settlement of Coleman's accounts, did not authorize the latter to treat his ward, "As a person at arm's length." The business of Muir's attorney seems to have been to look after the settlement. He is not shown to have had anything to do with the manner in which Coleman undertook to pay off his ward, and as the guardian failed to exercise proper vigilence in the management of his ward's estate, and attempting to pay off a portion of the amount he owed in a cash note, instead of in money as he should have done, the mere presence of an attorney will not authorize the relaxation of that strictness which, as Lord Hardwicks says, public utility requires, shall be enforced. *Hylton v. Hylton*, 2 Ves. 548.

This court is of opinion that upon the facts as presented by the record, appellant is entitled to the relief sought.

The judgment dismissing his petition is *reversed,* and the cause remanded for proceedings consistent with this opinion.

*S. W. Kennedy, Rodman, for appellant.*

*Petrie, Reeves, for appellee.*